**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| UNITED STATES OF AMERICA, CALIFORNIA, COLORADO, CONNECTICUT, DELAWARE, DISTRICT OF COLUMBIA, FLORIDA, GEORGIA, HAWAII, ILLINOIS, INDIANA, IOWA, LOUISIANA, MARYLAND, MASSACHUSETTS, MICHIGAN, MINNESOTA, MONTANA, NEVADA, NEW JERSEY, NEW MEXICO, NEW YORK, NORTH CAROLINA, OKLAHOMA, RHODE ISLAND, TENNESSEE, TEXAS, VIRGINIA, WISCONSIN | Civil Action No. 15-cv-6264<br><br>**JURY DEMAND**<br><br>██████████████ |

*ex rel.* Cathleen Forney
1441 Drake Lane
Lancaster, PA 17601

        *Plaintiffs*


v.  MEDTRONIC, INC.
710 Medtronic Pkwy NE
Minneapolis, MN 55432

        *Defendant.*

---

### *FIRST AMENDED COMPLAINT*

1.   Defendant Medtronic Inc. ("Medtronic") manufactures and sells medical devices, including medical devices used during heart surgeries and procedures, such as pacemakers, defibrillators, stents and catheters.   In order to increase its sales, Medtronic paid kickbacks to physicians and hospitals.  These kickbacks were paid by providing free surgical, device follow up (interrogation analysis),  and other staffing services, which physicians and hospitals used in lieu of having to pay for their own employees.

(Hereinafter, this Complaint uses the term "staffing kickbacks" to describe this dynamic.)

By paying these staffing kickbacks, Medtronic violated the Medicare and Medicaid anti-kickback laws, 42 U.S.C. 1320a-7b(b) *et seq*. and Section 1877 of the Social Security Act (referred to as the "Stark law").

2.      The payment of Medtronic staffing kickbacks caused physicians and hospitals to submit false claims to Medicare and Medicaid, which require providers to certify compliance with the anti-kickback laws and regulations as a condition precedent to payment.  In addition, as it implemented its staffing kickback scheme, Medtronic violated the Health Insurance Portability and Accountability Act of 1996 ("HIPAA") by using non-secure Internet services to transmit private health care information about patients and their heart conditions.

3.      Relator Cathleen Forney brings this action under the False Claims Act ("FCA"), 31 U.S.C. § 3729 *et seq*. and the False Claims Acts of California, Colorado, Connecticut, Delaware, District of Columbia, Florida, Georgia, Hawaii, Illinois, Indiana, Iowa, Louisiana, Maryland, Massachusetts, Michigan, Minnesota, Montana, Nevada, New Jersey, New Mexico, New York, North Carolina, Oklahoma, Rhode Island, Tennessee, Texas, Virginia and Wisconsin. (These States are hereinafter referred to as "Plaintiff States.")

## PARTIES

4.      Relator Cathleen Forney resides at 1441 Drake Lane, Lancaster, PA 17601. Beginning in April 1996, she joined Medtronic and rose through the professional ranks, reaching the executive position of District Service Manager.  Medtronic terminated her in 2012 in retaliation for her refusal to acquiesce in Medtronic's knowing and persistent violations of HIPAA.

5.      Relator Forney has direct and independent knowledge of Medtronic's staffing kickbacks and HIPAA violations.  She acquired this first-hand knowledge of Medtronic's

wrongdoing through a career of employment related to cardiac care, including employment with Medtronic.

6.      Relator Forney brings this action under the *qui tam* provision of the federal and state False Claims Acts.  Relator Forney shared all information with the United States and Plaintiff States prior to filing suit under seal.  Relator Forney complied with all the statutory requirements placed on *qui tam* relators.

7.      Plaintiff United States relies on the federal False Claims Act (hereinafter "FCA"), which prohibits persons from making false claims and false statements to obtain reimbursement from federally-funding health care insurance programs.

8.      The Plaintiff States rely on state-specific statutes modeled on the federal FCA. The State False Claims Act apply, *inter alia,* to the state portion of Medicaid losses caused by false Medicaid claims to the jointly federal-state funded Medicaid program. The Plaintiff States' FCAs each contain *qui tam* provisions permitting a knowledgeable relator to participate in the State's recovery.  The Plaintiff States include California, Colorado, Connecticut, Delaware, D.C., Florida, Georgia, Hawaii, Illinois, Indiana, Iowa, Louisiana, Maryland, Massachusetts, Michigan, Minnesota, Montana, New York, North Carolina, Oklahoma, Rhode Island, Tennessee, Texas, Virginia and Wisconsin, all of whom fund health insurance programs.

9.      Defendant Medtronic is a publicly-traded medical device company operating in this State and around the globe. Medtronic corporate headquarters were located in Minneapolis, Minnesota, and are now located in Dublin, Ireland. Medtronic was founded in 1949, and currently operates in 140 countries. According to its website, Medtronic employs approximately 40,000 people in its global workface.  Medtronic's sales in the United States

3

generated between 8.8 to 9.2 billion dollars per year.

## JURISDICTION AND VENUE

10.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 31 U.S.C. § 3732 (a) and (b).

11.     Venue is proper in this jurisdiction pursuant to 31 U.S.C. § 3732(a) and (b).

## FACTUAL ALLEGATIONS

12.     Relator Forney served as District Manager for the Cardio and Vascular Group in Eastern Pennsylvania District.  At the direction of her management, she directly participated in certain of the events described in this lawsuit.  Among other things, she oversaw the scheduling of the staffing services by her subordinates.

13.     Medtronic Cardio Vascular Group manufactures and distributes medical devices used by cardiologists, including pacemakers, defibrillators, stents and catheters.

14.      Medtronic engages in a nationwide marketing to promote the purchase of its devices.  According to Medtronic's filings with the Security and Exchange Commission, sales by Medtronic's Cardio and Vascular Group net sales reached $9.361 billion (out of overall sales of $20.261 billion) for fiscal year 2015.

15.     Within the United States during the time period at issue in this lawsuit, Medtronic marketed a series of products that need to be implanted into patients during surgical procedures. The devices requiring surgical implantation include, among others, (a) the Concerto CRT-D, a cardio resynchorinzation therapy and defibrillator, (b) the Virtuoso DR ICD, an implantable cardioverter defibrillator, (c) the InSync Sentry CCRT-D, (d) the OptiVol fluid status monitoring

4

device, (e) the CardioSight and Cardiac Compass cardiac monitory devices, (f) Reveal insertable loop recorder, and the (g) Sprint-fidelis lead system.

16.     None of these devices is new to cardiologists, as all have been approved for marketing by the Federal Food and Drug Administration for at least five years.  Yet as part of marketing the devices, Medtronic touted its willingness to provide free services. Medtronic required employees to engage in "strategic territory and account planning." Medtronic directed that employees gather extensive data about hospital and physician practices, including their reimbursement rates on devices.  And Medtronic directed employees to create direct relationships with patients as part of its marketing efforts. These district plans were required to include provision of free services as marketing tools. This marketing was aimed at physicians, nurse practitioners, practice administrators, and any others who had any impact on purchasing decisions.  Medtronic positioned itself as a "partner" who "adds most value through differentiating service and support to all customers."

17.     Medtronic is well acquainted with the manner in which its customers billed the federal health care programs.  Medtronic spent substantial energy and resources briefing and updating its customers on how to bill the federal health care programs, and obtain maximum reimbursement from the federal government.   Medtronic offered free assistance on billing devices to its customers.

18.     Medtronic knew that its customers used CMS Form 1500 to submit invoices for payment to the federal health care system.

19.     CMS conditioned payment of claims submitted by physicians and hospitals upon compliance with the anti-kickback and Stark laws.  With respect to each

and every claim tainted by Medtronic staffing kickbacks, had CMS known that the physicians and hospitals were accepting staffing kickbacks from Medtronic, CMS would not have paid any of the submitted claims.

20.     CMS Form 1500 requires those seeking payment from the federal government to certify that they have not engaged in any violations of the federal anti-kickback statue. Specifically, CMS Form 1500 includes the following certification: "In submitting this claim for payment from federal funds, I certify that: 1) the information on this form is true, accurate and complete; … 4) this claim, whether submitted by me or on my behalf by my designated billing company, complies with all applicable Medicare and/or Medicaid laws, regulations, and program instructions for payment including but not limited to the federal anti-kickback statute and Physician Self-Referral law (commonly known as Stark law). . . ."

21.     Further, the CMS Form 1500 expressly states "NOTICE:  This is to certify that the foregoing information is true, accurate and complete.  I understand that payment and satisfaction of this claim will be from Federal and State funds, and that any false claims, statements, or documents, or concealment of a material fact, may be prosecuted under applicable Federal or State laws."

22.     AdvaMed, the trade association for the medical device industry, cautions its members against such kickbacks:  "For example, a Company should not provide free services that would eliminate an overhead or other expense that a Health Care Professional would otherwise of business prudence or necessity have incurred as part of its business operations. . . . " See Revised and Restated Code of Ethics, effective July 1, 2009, at Paragraph X.

23.     Medtronic paid staffing kickbacks in the form of free surgical support, implant device follow up (interrogation analysis), and other services to an extensive group of physicians

6

and hospitals across the nation. Medtronic induced physicians and others with purchasing power to select Medtronic devices – which are off-the-shelf commodities – by offering free services that benefitted physician practices but increased the costs to the federal and state government programs.  Medtronic provided free services long after the implantation of the device.  Physicians were induced to remain with Medtronic products by these kickbacks, as the free labor benefitted their bottom line.  Medtronic also used these free services as a mechanism to create direct relationships with patients, and try to create patient loyalty and demand for Medtronic products.

24.     To date, Medtronic continues to provide kickbacks in the form of free surgical support, post-implant device interrogation and analysis, and other services.  Medtronic provides free staff to clinics, where a Medtronic employee will spend 4 to 8 hours conducting interrogations and other services.  Among other indicia of the wrongdoing, Medtronic's website, accessed on January 8, 2015, included job postings that reveal Medtronic continues to attempt to implement this nationwide scheme to procure sales of its products by providing physicians with free surgical staffing assistance.  Medtronic was seeking persons willing to "scrub in" on surgical procedures and willing to "represent Medtronic during surgeries and implants of products to provide troubleshooting and other technical assistance."

25.     Medtronic caused false claims to be submitted to fiscal intermediaries for payment.  Medtronic's customers (cardiologists and hospitals) billed Medicare, Medicaid, and private insurers to obtain payment for the health care provided to the patients receiving Medtronic devices.  Physicians and hospitals receiving staffing kickbacks presented claims for payment to fiscal intermediaries in all fifty states without disclosing the receipt of the staffing kickbacks, and instead falsely certifying that they had complied

7

with the Anti-Kickback laws and regulations.  Had the fiscal intermediaries known that those certifications were false, and that Medtronic had paid kickbacks in the form of free surgical services as a means to induce purchase of Medtronic devices, the fiscal intermediaries would not have paid the claims. The following provides examples of Medtronic's payment of kickbacks in Pennsylvania, and identifies the provider who Medtronic caused to submit false claims for reimbursement:

| Patient AJ | Dr. Gulotta | Single ICD check | November 9, 2011 |
|---|---|---|---|
| Patient DN | Lehigh Valley Cardiology Associates | Pacer check | November 22, 2011 |
| Patient EH | St. Luke's Allentown | Interrogation of device | November 16, 2011 |
| Patient MB | Leigh Valley Cardiology Associates | Interrogation of device | November 11, 2011 |
| Patient RF | Leigh Valley Cardiology Associates | Pacer check | December 13, 2011 |
| Patient JW | Leigh Valley Cardiology | Device check | December 29, 2011 |

| | Associates | | |
|---|---|---|---|
| | | | |

To give a sense of the frequency of the kickbacks, the following are a snapshot of a few days in Pennsylvania locations, during which Medtronic employees provided free services (surgical, device follow up interrogation and analysis, and others). This same pattern of providing free services prevailed across the nation, with Medtronic providing multiple surgical, interrogation and other staffing kickbacks on a daily basis.

Palmerton

11/30/2011  6 patients

12/21/2011  4 patients

2/08/2012   1 patient

2/15/2012    4 patients

2/22/2012   3 patients

Quakertown

12/02/2011 11 patients

1/06/2012   10 patients

2/03/2012    5 patients

3/03/2012  4 patients

Windgap

12/06/2011 10 patients

01/03/2012 10 patients

26.     Medtronic also violated HIPAA by using an unsecured Internet program (called Google Calendar) to transmit protected and private health information amongst sales representatives and clinical specialists working in the Eastern Pennsylvania District.  This calendaring system was used by numerous district and divisions across the United States during the time period when Medtronic was downsizing support administrative staff and eliminating district offices. Medtronic eventually trained its field organization to track scheduled cases with SalesForce software, which requires Medtronic staff support.  Thus, the Google Calendar and SalesForce records demonstrate Medtronic's nationwide and continuous payment of surgical staffing kickbacks.

27.     Medtronic knew that it was violating HIPAA by disseminating patient data over unsecured programs such as Google Calendar.  Medtronic's 2013 10 K filed with the Securities and Exchange Commission includes the following admission:  "Medtronic only operates as a Business Associate to Covered Entities in a limited number of instances. In those cases, the patient data that we receive and analyze may include protected health information. We are committed to maintaining the security and privacy of patients' health information and believe that we meet the expectations of the HIPAA rules. Some modifications to our systems and policies may be necessary, but the framework is already in place. However, the potential for enforcement action against us is now greater, as HHS can take action directly against Business Associates. Thus, while we believe we are and will be in substantial compliance with HIPAA standards, there is no guarantee that the government will not disagree. Enforcement actions can be costly and interrupt regular operations of our business. Nonetheless, these requirements affect a limited subset of our business. We believe the ongoing costs and impacts of assuring

compliance with the HIPAA privacy and security rules are not material to our business."
(Emphasis added.)

## COUNT ONE – FALSE CLAIMS

28.     Relator alleges and incorporates by reference the foregoing paragraphs as
if fully set forth herein.

29.     This is a claim for treble damages and forfeitures under the FCA, 31
U.S.C. §§ 3729-32, and for all available damages and forfeitures available under the
FCA.

30.     The Relator has satisfied and/or will satisfy all requirements set forth in
the federal FCA, 31 U.S.C. § 3730(a)(2), including filing this action under seal and
serving on the United States government a copy of this Complaint and a written
disclosure of related material evidence and information.

31.     Medtronic knowingly and intentionally caused false and fraudulent claims
to be presented to the United States and the Plaintiff States.

32.     Had the United States and the Plaintiff States known that Medtronic was
paying kickbacks in the form of free surgical staff services, it would not have relied upon
the false certifications and made the payments to the Kickback Recipients.

33.     As a result of Medtronic's conduct causing false claims to be submitted,
the United States and the Plaintiff States have paid millions of dollars in false claims as a
result of Medtronic's kickback schemes, which persist to date.

        .

11

## COUNT TWO - VIOLATIONS OF THE CALIFORNIA FCA
### Cal. Gov't Code § 12651(a)

34.     Relator alleges and incorporates by reference the foregoing paragraphs as if fully set forth herein.

35.     The California FCA, Cal. Gov't Code § 12651(a), specifically provides, in part:

(a)     Any person who commits any of the following enumerated acts in this subdivision shall have violated this article and shall be liable to the state or to the political subdivision for three times the amount of damages that the state or political subdivision sustains because of the act of that person. A person who commits any of the following enumerated acts shall also be liable to the state or to the political subdivision for the costs of a civil action brought to recover any of those penalties or damages, and shall be liable to the state or political subdivision for a civil penalty of not less than five thousand dollars ($5,000) and not more than ten thousand dollars ($10,000) for each violation:

(1)     Knowingly presents or causes to be presented a false or fraudulent claim for payment or approval.

(2)     Knowingly makes, uses, or causes to be made or used a false record or statement material to a false or fraudulent claim.

(3)     Conspires to commit a violation of this subdivision.

(4)     Has possession, custody, or control of public property or money used or to be used by the state or by any political subdivision and knowingly delivers or causes to be delivered less than all of that property.

(5)     Is authorized to make or deliver a document certifying receipt of property used or to be used by the state or by any political subdivision and knowingly makes or delivers a receipt that falsely represents the property used or to be used.

(6)     Knowingly buys, or receives as a pledge of an obligation or debt, public property from any person who lawfully may not sell or pledge the property.

(7)     Knowingly makes, uses, or causes to be made or used a false record or statement material to an obligation to pay or transmit money or property to the state or to any political subdivision, or knowingly conceals, or

12

knowingly and improperly avoids, or decreases an obligation to pay or transmit money or property to the state or to any political subdivision.

(8)    Is a beneficiary of an inadvertent submission of a false claim subsequently discovers the falsity of the claim, and fails to disclose the false claim to the state or the political subdivision within a reasonable time after discovery of the false claim.

36.    Defendant knowingly presented or caused to be presented to the California Medicaid program false or fraudulent records or statements and false or fraudulent claims for payment and approval, claims which failed to disclose material violations of law, and/or concealed their actions and to avoid or decrease an obligation to pay or transmit money to the state, and conspired with others to do so, all in violation of California Government Code § 12651(a).

37.    The State of California paid said claims and has sustained damages, to the extent of its portion of Medicaid losses from Medicaid claims filed in California, because of these acts by Defendant.

## COUNT THREE- VIOLATIONS OF THE COLORADO MEDICAID FCA
## Col. Rev. Stat. § 25.5-4-305

38.    Relator alleges and incorporates by reference the foregoing paragraphs as if fully set forth herein.

39.     The Colorado Medicaid FCA, Col. Rev. Stat. § 25.5-4-305, provides and attaches liability to any person who:

(a)    Knowingly presents, or causes to be presented, to an officer or employee of the state a false or fraudulent claim for payment or approval;

(b)    Knowingly makes, uses, or causes to be made or used a false record or statement material to a false or fraudulent claim;

13

(c)     Has possession, custody, or control of property or money used, or to be used, by the state in connection with the "Colorado Medical Assistance Act" and knowingly delivers, or causes to be delivered, less than all of the money or property;

(d)     Authorizes the making or delivery of a document certifying receipt of property used, or to be used, by the state in connection with the "Colorado Medical Assistance Act" and, intending to defraud the state, makes or delivers the receipt without completely knowing that the information on the receipt is true;

(e)     Knowingly buys, or receives as a pledge of an obligation or debt, public property from an officer or employee of the state in connection with the "Colorado Medical Assistance Act" who lawfully may not sell or pledge the property;

(f)     Knowingly makes, uses, or causes to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the state in connection with the "Colorado Medical Assistance Act", or knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the state in connection with the "Colorado Medical Assistance Act";

(g)     Conspires to commit a violation of paragraphs (a) to (f) of this subsection (1).

40.     Defendant knowingly presented or caused to be presented to the Colorado Medicaid program false or fraudulent records or statements and false or fraudulent claims for payment and approval, claims which failed to disclose material violations of law, and/or concealed their actions and to avoid or decrease an obligation to pay or transmit money to the state, and conspired with others to do so, all in violation of the Colorado FCA.

41.     The State of Colorado paid said claims and has sustained damages, to the extent of its portion of Medicaid losses from Medicaid claims filed in Colorado, because of these acts by Defendant.

14

## COUNT FOUR - VIOLATIONS OF THE CONNECTICUT FCA
## FOR MEDICAL ASSISTANCE PROGRAMS
## Conn. Gen. Stat. § 17b-301b

42.     Relator alleges and incorporates by reference the foregoing paragraphs as if fully set forth herein.

43.     The Connecticut FCA for Medical Assistance Programs, Conn. Gen. Stat. § 17b-301b, recodified and expanded at Conn. Gen. Stat. § 4-274 et seq.,  provides, in part:

(a)     no person shall:

    (1)     Knowingly present, or cause to be presented, to an officer or employee of the state a false or fraudulent claim for payment or approval under a medical assistance program administered by the Department of Social Services;

    (2)     Knowingly make, use or cause to be made or used, a false record or statement to secure the payment or approval by the state of a false or fraudulent claim under a medical assistance program administered by the Department of Social Services;

    (3)     Conspire to defraud the state by securing the allowance or payment of a false or fraudulent claim under a medical assistance program administered by the Department of Social Services;

    (4)     Having possession, custody or control of property or money used, or to be used, by the state relative to a medical assistance program administered by the Department of Social Services, and intending to defraud the state or willfully to conceal the property, deliver or cause to be delivered less property than the amount for which the person receives a certificate or receipt;

    (5)     Being authorized to make or deliver a document certifying receipt of property used, or to be used, by the state relative to a medical assistance program administered by the Department of Social Services and intending to defraud the state, make or deliver such document without completely knowing that the information on the document is true;

(6)     Knowingly buy, or receive as a pledge of an obligation or debt, public property from an officer or employee of the state relative to a medical assistance program administered by the Department of Social Services, who lawfully may not sell or pledge the property; or

(7)     Knowingly make, use or cause to be made or used, a false record or statement to conceal, avoid or decrease an obligation to pay or transmit money or property to the state under a medical assistance program administered by the Department of Social Services.

44.     Defendant knowingly presented or caused to be presented to the Connecticut Medicaid program false or fraudulent records or statements and false or fraudulent claims for payment and approval, claims which failed to disclose material violations of law, and/or concealed their actions and to avoid or decrease an obligation to pay or transmit money to the state, and conspired with others to do so, all in violation of the Connecticut FCA.

45.     The State of Connecticut paid said claims and has sustained damages, to the extent of its portion of Medicaid losses from Medicaid claims filed in Connecticut, because of these acts by Defendant.

## COUNT FIVE -- VIOLATIONS OF THE DELAWARE FALSE CLAIMS AND REPORTING ACT
### Del. Code Ann. tit. 6, § 1201(a)

46.     Relator alleges and incorporates by reference the foregoing paragraphs as if fully set forth herein.

47.     The Delaware False Claims and Reporting Act, Del. Code Ann. tit. 6, § 1201(a), specifically provides, in part:

(a)     Any person who:

(1)     Knowingly presents, or causes to be presented to an officer or employee of the Government a false or fraudulent claim for payment or approval;

16

(2)     Knowingly makes, uses, or causes to be made or used a false record or statement to get a false or fraudulent claim paid or approved by the Government;

(3)     Conspires to defraud the Government by getting a false or fraudulent claim allowed or paid;

(4)     Has possession, custody or control of property or money used or to be used by the Government and, intending to defraud the Government or willfully to conceal the property, delivers or causes to be delivered, less property than the amount for which the person receives a certificate or receipt;

(5)     Is authorized to make or deliver a document certifying receipt of property used or to be used by the Government and, intending to defraud the Government, makes or delivers the receipt without completely knowing that the information on the receipt is true;

(6)     Knowingly buys, or receives as a pledge of an obligation or debt, public property from an officer or employee of the Government who may not lawfully sell or pledge the property; or

(7)     Knowingly makes, uses, or causes to be made or used a false record or statement to conceal, avoid, or decrease an obligation to pay or transmit money or property to the Government shall be liable to the Government for a civil penalty of not less than $ 5,500 and not more than $11,000 for each act constituting a violation of this section, plus 3 times the amount of damages which the Government sustains because of the act of that person.

48.   Defendant knowingly presented or caused to be presented to the Delaware

Medicaid program false or fraudulent records or statements and false or fraudulent

claims for payment and approval, claims which failed to disclose material violations

of law, and/or concealed their actions and to avoid or decrease an obligation to pay or

transmit money to the state, and conspired with others to do so, all in violation of

Delaware Code Title 6, § 1201(a).

49.   The State of Delaware paid said claims, and has sustained damages, to the extent

of its portion of Medicaid losses from Medicaid claims filed in Delaware, because of

17

these acts by Defendant.

## COUNT SIX - VIOLATIONS OF THE DISTRICT OF COLUMBIA FCA
### D.C. Code § 2-308.14(a)

50.     Relator alleges and incorporates by reference the foregoing paragraphs as if fully

set forth herein.

51.     The District of Columbia FCA, D.C. Code § 2-308.14(a), specifically provides, in

part:

(a)     Any person who commits any of the following acts shall be liable to the District for 3 times the amount of damages which the District sustains because of the act of that person. A person who commits any of the following acts shall also be liable to the District for the costs of a civil action brought to recover penalties or damages, and may be liable to the District for a civil penalty of not less than $5,000, and not more than $10,000, for each false claim for which the person:

    (1)     Knowingly presents, or causes to be presented, to an officer or employee of the District a false claim for payment or approval;

    (2)     Knowingly makes, uses, or causes to be made or used, a false record or statement to get a false claim paid or approved by the District;

    (3)     Conspires to defraud the District by getting a false claim allowed or paid by the District;

    (4)     Has possession, custody, or control of public property or money used, or to be used, by the District and knowingly delivers, or causes to be delivered, less property than the amount for which the person receives a certificate or receipt;

    (5)     Is authorized to make or deliver a document certifying receipt of property used, or to be used, by the District and knowingly makes or delivers a document that falsely represents the property used or to be used;

    (6)     Knowingly buys, or receives as a pledge of an obligation or debt, public property from any person who lawfully may not sell or pledge the property;

    (7)     Knowingly makes or uses, or causes to be made or used, a false record or statement to conceal, avoid, or decrease an obligation to pay or transmit money or property to the District;

18

(8)     Is a beneficiary of an inadvertent submission of a false claim to the District, subsequently discovers the falsity of the claim, and fails to disclose the false claim to the District; or

(9)     Is the beneficiary of an inadvertent payment or overpayment by the District of monies not due and knowingly fails to repay the inadvertent payment or overpayment to the District.

**52.**     Defendant knowingly presented or caused to be presented to the District of Columbia Medicaid program false or fraudulent records or statements and false or fraudulent claims for payment and approval, claims which failed to disclose material violations of law, and/or concealed their actions and to avoid or decrease an obligation to pay or transmit money to the state, and conspired with others to do so, all in violation of D.C. Code § 2-308.14(a).

53.     The District of Columbia paid said claims and has sustained damages, to the extent of its portion of Medicaid losses from Medicaid claims filed in the District of Columbia, because of these acts by Defendant.

### COUNT SEVEN - VIOLATIONS OF THE FLORIDA FCA
### Fla. Stat. § 68.082(2)

54.     Relator alleges and incorporates by reference the foregoing paragraphs as if fully set forth herein.

55.     The Florida FCA, Fla. Stat. § 68.082(2), specifically provides, in part, that:

(2)     Any person who:

(a)     Knowingly presents or causes to be presented to an officer or employee of an agency a false or fraudulent claim for payment or approval;

(b)     Knowingly makes, uses, or causes to be made or used a false record or statement to get a false or fraudulent claim paid or approved by an agency;

(c)     Conspires to submit a false or fraudulent claim to an agency or to deceive

19

an agency for the purpose of getting a false or fraudulent claim allowed or paid;

(d) Has possession, custody, or control of property or money used or to be used by an agency and, intending to deceive the agency or knowingly conceal the property, delivers or causes to be delivered less property than the amount for which the person receives a certificate or receipt;

(e) Is authorized to make or deliver a document certifying receipt of property used or to be used by an agency and, intending to deceive the agency, makes or delivers the receipt without knowing that the information on the receipt is true;

(f) Knowingly buys or receives, as a pledge of an obligation or a debt, public property from an officer or employee of an agency who may not sell or pledge the property lawfully; or

(g) Knowingly makes, uses, or causes to be made or used a false record or statement to conceal, avoid, or decrease an obligation to pay or transmit money or property to an agency, is liable to the state for a civil penalty of not less than $5,500 and not more than $11,000 and for treble the amount of damages the agency sustains because of the act or omission of that person.

56.     Defendant knowingly presented or caused to be presented to the Florida Medicaid program false or fraudulent records or statements and false or fraudulent claims for payment and approval, claims which failed to disclose material violations of law, and/or concealed their actions and to avoid or decrease an obligation to pay or transmit money to the state, and conspired with others to do so, all in violation of Florida Statute § 68.082(2).

57.     The State of Florida paid said claims and has sustained damages, to the extent of its portion of Medicaid losses from Medicaid claims filed in Florida, because of these acts by Defendant.

## COUNT EIGHT - VIOLATIONS OF THE GEORGIA STATE FALSE MEDICAID CLAIMS ACT

### Ga. Code  Ann. § 49-4-168.1

58.     Relator alleges and incorporates by reference the foregoing paragraphs as if fully set forth herein.

59.     The Georgia State False Medicaid Claims Act, Ga. Code Ann. § 49-4-168.1, specifically provides, in part:

(a)     Any person who:

    (1)     Knowingly presents or causes to be presented to the Georgia Medicaid program a false or fraudulent claim for payment or approval;

    (2)     Knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the Georgia Medicaid program;

    (3)     Conspires to defraud the Georgia Medicaid program by getting a false or fraudulent claim allowed or paid;

    (4)     Has possession, custody, or control of property or money used or to be used by the Georgia Medicaid program and, intending to defraud the Georgia Medicaid program or willfully to conceal the property, delivers, or causes to be delivered, less property than the amount for which the person receives a certificate of receipt;

    (5)     Being authorized to make or deliver a document certifying receipt of property used, or to be used, by the Georgia Medicaid program and, intending to defraud the Georgia Medicaid program, makes or delivers the receipt without completely knowing that the information on the receipt is true;

    (6)     Knowingly buys, or receives as a pledge of an obligation or debt, public property from an officer or employee of the Georgia Medicaid program who lawfully may not sell or pledge the property; or

    (7)     Knowingly makes, uses, or causes to be made or used a false record or statement to conceal, avoid, or decrease an obligation to pay, repay, or transmit money or property to the State of Georgia shall be liable to the State of Georgia for a civil penalty of not less than $5,500.00 and not more than $11,000.00 for each false or fraudulent claim, plus three times the

21

amount of damages which the Georgia Medicaid program sustains because of the act of such person.

60.     Defendant knowingly presented or caused to be presented to the Georgia Medicaid program false or fraudulent records or statements and false or fraudulent claims for payment and approval, claims which failed to disclose material violations of law, and/or concealed their actions and to avoid or decrease an obligation to pay or transmit money to the state, and conspired with others to do so, all in violation of Georgia Code § 49-4-168.1.

61.     The State of Georgia paid said claims and has sustained damages, to the extent of its portion of Medicaid losses from Medicaid claims filed in Georgia, because of these acts by Defendant.

## COUNT NINE - VIOLATIONS OF THE HAWAII FCA
## Haw. Rev. Stat. § 661-21

62.     Relator alleges and incorporates by reference the foregoing paragraphs as if fully set forth herein.

63.     The Hawaii FCA, Haw. Rev. Stat. § 661-21(a), specifically provides, in part, that any person who:

(1)     Knowingly presents, or causes to be presented, to an officer or employee of the State a false or fraudulent claim for payment or approval;

(2)     Knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the State;

(3)     Conspires to defraud the State by getting a false or fraudulent claim allowed or paid;

(4)     Has possession, custody, or control of property or money used, or to be used, by
the State and, intending to defraud the State or willfully to conceal the property,
delivers, or causes to be delivered, less property than the amount for which the
person receives a certificate or receipt;

(5)     Is authorized to make or deliver a document certifying receipt of property used, or
to be used by the State and, intending to defraud the State, makes or delivers the
receipt without completely knowing that the information on the receipt is true;

(6)     Knowingly buys, or receives as a pledge of an obligation or debt, public property
from any officer or employee of the State who may not lawfully sell or pledge the
property;

(7)     Knowingly makes, uses, or causes to be made or used, a false record or statement
to conceal, avoid, or decrease an obligation to pay or transmit money or property
to the State; or

(8)     Is a beneficiary of an inadvertent submission of a false claim to the State, who
subsequently discovers the falsity of the claim, and fails to disclose the false claim
to the State within a reasonable time after discovery of the false claim;
shall be liable to the State for a civil penalty of not less than $5,000 and not more
than $10,000, plus three times the amount of damages that the State sustains due
to the act of that person.

64.     Defendant knowingly presented or caused to be presented to the Hawaii Medicaid

program false or fraudulent records or statements and false or fraudulent claims for

payment and approval, claims which failed to disclose material violations of law,

and/or concealed their actions and to avoid or decrease an obligation to pay or

transmit money to the state, and conspired with others to do so, all in violation of

Hawaii Revised Statute § 661-21(a).

23

65. The State of Hawaii paid said claims and has sustained damages, to the extent of

its portion of Medicaid losses from Medicaid claims filed in Hawaii, because of these

acts by Defendant

### COUNT TEN - VIOLATIONS OF THE ILLINOIS FALSE CLAIMS WHISTLEBLOWER REWARD AND PROTECTION ACT
### 740 Ill. Comp. Stat. § 175/3(a)

66. Relator alleges and incorporates by reference the foregoing paragraphs as if fully

set forth herein.

67. The Illinois False Claims Whistleblower Reward and Protection Act, 740 Ill.

Comp. Stat. § 175/3(a), specifically provides, in part, that:

(1)    In general, any person who:

   (A)    knowingly presents, or causes to be presented, a false or fraudulent claim
for payment or approval;

   (B)    knowingly makes, uses, or causes to be made or used, a false record or
statement material to a false or fraudulent claim;

   (C)    conspires to commit a violation of subparagraph (A), (B), (D), (E), (F), or
(G);

   (D)    has possession, custody, or control of property or money used, or to be
used, by the State and, knowingly delivers, or causes to be delivered, less
than all the money or property;

   (E)    is authorized to make or deliver a document certifying receipt of property
used, or to be used, by the State and, intending to defraud the State, makes

24

or delivers the receipt without completely knowing that the information on the receipt is true;

    (F)    knowingly buys, or receives as a pledge of an obligation or debt, public property from an officer or employee of the State, or a member of the Guard, who lawfully may not sell or pledge property; or

    (G)    knowingly makes, uses, or causes to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the State, or knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the state, is liable to the State for a civil penalty of not less than $5,500 and not more than $11,000, plus 3 times the amount of damages which the State sustains because of the act of that person.  The penalties in this Section are intended to be remedial rather than punitive and shall not preclude, nor shall be precluded by, a criminal prosecution for the same conduct.

68.    Defendant knowingly presented or caused to be presented to the Illinois Medicaid program false or fraudulent records or statements and false or fraudulent claims for payment and approval, claims which failed to disclose material violations of law, and/or concealed their actions and to avoid or decrease an obligation to pay or transmit money to the state, and conspired with others to do so, all in violation of 740 Illinois Compiled Statute § 175/3(a).

69.    The State of Illinois paid said claims and has sustained damages, to the extent of its portion of Medicaid losses from Medicaid claims filed in Illinois, because of these acts by Defendant.

## COUNT ELEVEN - VIOLATIONS OF THE IOWA FALSE CLAIMS ACT
### Iowa Code § 15-5-685.2

70.     Relator alleges and incorporates by reference the foregoing paragraphs as if fully

set forth herein.

71.     The Iowa False Claims Act, Iowa Code § 15-5-685.2.  specifically provides, in

part, that:

(2)     In general, any person who:


(A)     knowingly presents, or causes to be presented, a false or fraudulent claim
for payment or approval;

(B)     knowingly makes, uses, or causes to be made or used, a false record or
statement material to a false or fraudulent claim;

(C)     conspires to commit a violation of subparagraph (A), (B), (D), (E), (F), or
(G);

(D)     has possession, custody, or control of property or money used, or to be
used, by the State and, knowingly delivers, or causes to be delivered, less
than all the money or property;

(E)     is authorized to make or deliver a document certifying receipt of property
used, or to be used, by the State and, intending to defraud the State, makes
or delivers the receipt without completely knowing that the information on
the receipt is true;

(F)     knowingly buys, or receives as a pledge of an obligation or debt, public
property from an officer or employee of the State, or a member of the
Guard, who lawfully may not sell or pledge property; or

(G)     knowingly makes, uses, or causes to be made or used, a false record or
statement material to an obligation to pay or transmit money or property to
the State, or knowingly conceals or knowingly and improperly avoids or
decreases an obligation to pay or transmit money or property to the state,
is liable to the State for a civil penalty of not less than $5,500 and not
more than $10,000, plus 3 times the amount of damages which the State
sustains because of the act of that person.

26

72.     Defendant knowingly presented or caused to be presented to the Iowa Medicaid

program false or fraudulent records or statements and false or fraudulent claims for

payment and approval, claims which failed to disclose material violations of law,

and/or concealed their actions and to avoid or decrease an obligation to pay or

transmit money to the state, and conspired with others to do so, all in violation of

Iowa False Claims Act.

73.     The State of Iowa paid said claims and has sustained damages, to the extent of its

portion of Medicaid losses from Medicaid claims filed in Iowa, because of these acts

by Defendant.

**COUNT TWELVE  - VIOLATIONS OF THE STATE OF INDIANA FALSE CLAIMS
AND WHISTLEBLOWER PROTECTION ACT
Ind. Code § 5-5.5-2**

74.     Relator alleges and incorporates by reference the foregoing paragraphs as if fully

set forth herein.

75.     The Indiana False Claims and Whistleblower Protection Act, Ind. Code § 5-11-

5.5-2(b), specifically provides, in part:

(b)     A person who knowingly or intentionally:

   (1)     presents a false claim to the state for payment or approval;

   (2)     makes or uses a false record or statement to obtain payment or approval of
           a false claim from the state;

   (3)     with intent to defraud the state, delivers less money or property to the state
           than the amount recorded on the certificate or receipt the person receives
           from the state;

   (4)     with intent to defraud the state, authorizes issuance of a receipt without
           knowing that the information on the receipt is true;

(5)     receives public property as a pledge of an obligation on a debt from an employee who is not lawfully authorized to sell or pledge the property;

(6)     makes or uses a false record or statement to avoid an obligation to pay or transmit property to the state;

(7)     conspires with another person to perform an act described in subdivisions (1) through (6); or

(8)     causes or induces another person to perform an act described in subdivisions (1) through (6); is, except as provided in subsection (c), liable to the state for a civil penalty of at least five thousand dollars ($5,000) and for up to three (3) times the amount of damages sustained by the state.  In addition, a person who violates this section is liable to the state for the costs of a civil action brought to recover a penalty or damages.

76.    Defendant knowingly presented or caused to be presented to the Indiana Medicaid program false or fraudulent records or statements and false or fraudulent claims for payment and approval, claims which failed to disclose material violations of law, and/or concealed their actions and to avoid or decrease an obligation to pay or transmit money to the state, and conspired with others to do so, all in violation of Indiana Code § 5-11-5.5-2.

77.    The State of Indiana paid said claims and has sustained damages, to the extent of its portion of Medicaid losses from Medicaid claims filed in Indiana, because of these acts by Defendant.

**COUNT THIRTEEN - VIOLATIONS OF THE LOUISIANA FCA/MEDICAL
ASSISTANCE PROGRAMS INTEGRITY LAW
La. Rev. Stat. Ann. § 46:438.3**

78.    Relator alleges and incorporates by reference the foregoing paragraphs as if fully set forth herein.

79.    The Louisiana FCA/Medical Assistance Programs Integrity Law ("Louisiana

FCA"), Rev. Stat. Ann. § 46:438.3, specifically provides, in part, that:

A.    No person shall knowingly present or cause to be presented a false or fraudulent claim.

B.    No person shall knowingly engage in misrepresentation or make, use, or cause to be made or used, a false record or statement to obtain payment for a false or fraudulent claim from the medical assistance programs' funds.

C.    No person shall knowingly make, use, or cause to be made or used, a false record or statement to conceal, avoid, or decrease an obligation to pay or transmit money or property to the medical assistance programs.

D.    No person shall conspire to defraud, or attempt to defraud, the medical assistance programs through misrepresentation or by obtaining, or attempting to obtain, payment for a false or fraudulent claim.

80.    Louisiana FCA, Rev. Stat. Ann. § 46:438.2A(1), specifically provides that:

No person shall solicit, receive, offer or pay any remuneration, including but not limited to kickbacks, bribes, rebates, or . . . payments, directly or indirectly, overtly or covertly, in cash or in kind, for the following:  (1) In return for referring an individual to a health care provider, . . . for the furnishing or arranging to furnish any good, supply, or service for which payment may be made, in whole or in part, under the medical assistance programs.

81.    In addition, the Louisiana FCA, Rev. Stat. Ann. § 46:438.3 provides that:

No person shall knowingly present or cause to be presented a false or fraudulent claim . . . shall knowingly engage in misrepresentation to obtain payment from the medical assistance programs' funds . . . shall conspire to defraud, or attempt to defraud, the medical assistance programs . . . .

82.    Furthermore, the Louisiana FCA, Rev. Stat. Ann. § 46:438.4, provides that:

No person shall knowingly make, use or cause to be made or used a false, fictitious, or misleading statement on any form used for the purpose of certifying or qualifying any person for eligibility . . . to receive any good, service, or supply under the medical assistance programs which that person is not eligible to receive.

83.    Defendant knowingly presented or caused to be presented to the Louisiana

Medicaid program false or fraudulent records or statements and false or fraudulent

claims for payment and approval, claims which failed to disclose material violations

of law, and/or concealed their actions and to avoid or decrease an obligation to pay or transmit money to the state, and conspired with others to do so, all in violation of Louisiana Revised Statute § 46:438.3.

84.     The State of Louisiana paid said claims and has sustained damages, to the extent of its portion of Medicaid losses from Medicaid claims filed in Louisiana, because of these acts by Defendant.

## COUNT FOURTEEN - VIOLATIONS OF THE MARYLAND FALSE HEALTH CLAIMS ACT OF 2010
## Md. Code Ann., Health-Gen. § 2-602

85.     Relator alleges and incorporates by reference the foregoing paragraphs as if fully set forth herein.

86.     The Maryland False Health Claims Act, Md. Code Ann., Health-Gen. § 2-602, specifically provides that:

(A)     A person may not:

    (1)     Knowingly present or cause to be presented a false or fraudulent claim for payment or approval;

    (2)     Knowingly make, use, or cause to be made or used a false record or statement material to a false or fraudulent claim;

    (3)     Conspire to commit a violation under this subtitle;

    (4)     Have possession, custody, or control of money or other property used by or on behalf of the State under a State health plan or a State health program and knowingly deliver or cause to be delivered to the State less than all of that money or other property;

    (5)     (i)     Be authorized to make or deliver a receipt or other document certifying receipt of money or other property used or to be used by the State under a State health plan or a State health program; and

30

(ii)      Intending to defraud the State or the Department, make or deliver a receipt or document knowing that the information contained in the receipt or document is not true;

(6)      Knowingly buy or receive as a pledge of an obligation or debt publicly owned property from an officer, employee, or agent of a State health plan or a State health program who lawfully may not sell or pledge the property;

(7)      Knowingly make, use, or cause to be made or used, a false record or statement material to an obligation to pay or transmit money or other property to the State;

(8)      Knowingly conceal, or knowingly and improperly avoid or decrease, an obligation to pay or transmit money or other property to the State; or

(9)      Knowingly make any other false or fraudulent claim against a State health plan or a State health program.

87.      Defendant knowingly presented or caused to be presented to the Maryland Medicaid program false or fraudulent records or statements and false or fraudulent claims for payment and approval, claims which failed to disclose material violations of law, and/or concealed their actions and to avoid or decrease an obligation to pay or transmit money to the state, and conspired with others to do so, all in violation of the Maryland False Health Claims Act of 2010.

88.      The State of Maryland paid said claims and has sustained damages, to the extent of its portion of Medicaid losses from Medicaid claims filed in Maryland, because of these acts by Defendant.

## COUNT FIFTEEN - VIOLATIONS OF THE MASSACHUSETTS FCA
## Mass. Gen. Laws ch. 12, § 5B

89.      Relator alleges and incorporates by reference the foregoing paragraphs as if fully set forth herein.

31

90.     The Massachusetts FCA, Mass. Gen. Laws ch. 12, § 5B, specifically provides, in

part, that any person who:

(1)     knowingly presents, or causes to be presented, a false or fraudulent claim for
        payment or approval;

(2)     knowingly makes, uses, or causes to be made or used, a false record or statement
        to obtain payment or approval of a claim by the commonwealth or any political
        subdivision thereof;

(3)     conspires to defraud the commonwealth or any political subdivision thereof
        through the allowance or payment of a fraudulent claim;

(4)     has possession, custody, or control of property or money used, or to be used, by
        the commonwealth or any political subdivision thereof and knowingly delivers, or
        causes to be delivered to the commonwealth, less property than the amount for
        which the person receives a certificate or receipt with the intent to willfully
        conceal the property;

(5)     is authorized to make or deliver a document certifying receipt of property used, or
        to be used, by the commonwealth or any political subdivision thereof and with the
        intent of defrauding the commonwealth or any political subdivision thereof,
        makes or delivers the receipt without completely knowing that the information on
        the receipt is true;

(6)     buys, or receives as a pledge of an obligation or debt, public property from an
        officer or employee of the commonwealth or any political subdivision thereof,
        knowing that said officer or employee may not lawfully sell or pledge the
        property;

(7)     enters into an agreement, contract or understanding with one or more officials of
        the commonwealth or any political subdivision thereof knowing the information
        contained therein is false;

(8)     knowingly makes, uses, or causes to be made or used, a false record or statement
        to conceal, avoid, or decrease an obligation to pay or to transmit money or
        property to the commonwealth or political subdivision thereof; or

(9)     is a beneficiary of an inadvertent submission of a false claim to the
        commonwealth or political subdivision thereof, subsequently discovers the falsity
        of the claim, and fails to disclose the false claim to the commonwealth or political
        subdivision within a reasonable time after discovery of the false claim shall be
        liable to the commonwealth or political subdivision for a civil penalty of not less
        than $5,000 and not more than $10,000 per violation, plus three times the amount

32

of damages, including consequential damages, that the commonwealth or political subdivision sustains because of the act of that person. A person violating sections 5B to 5O, inclusive, shall also be liable to the commonwealth or any political subdivision for the expenses of the civil action brought to recover any such penalty or damages, including without limitation reasonable attorney's fees, reasonable expert's fees and the costs of investigation, as set forth below. . . .

91.     Defendant knowingly presented or caused to be presented to the Massachusetts

Medicaid program false or fraudulent records or statements and false or fraudulent

claims for payment and approval, claims which failed to disclose material violations

of law, and/or concealed their actions and to avoid or decrease an obligation to pay or

transmit money to the state, and conspired with others to do so, all in violation of

Massachusetts General Laws ch. 12, § 5B.

92.     The Commonwealth of Massachusetts paid said claims and has sustained

damages, to the extent of its portion of Medicaid losses from Medicaid claims filed in

Massachusetts, because of these acts by Defendant.


## COUNT SIXTEEN - VIOLATIONS OF THE MICHIGAN MEDICAID FCA
### Mich. Comp. Laws § 400.601 *et seq.*

93.     Relator alleges and incorporates by reference the foregoing paragraphs as if fully

set forth herein.

94.     The Michigan Medicaid FCA, Mich. Comp. Laws § 400.603, provides, *inter alia*,

that:

(1)     A person shall not knowingly make or cause to be made a false statement or false representation of a material fact in an application for Medicaid benefits.

(2)     A person shall not knowingly make or cause to be made a false statement or false representation of a material fact for use in determining rights to a medicaid benefit.

(3)   A person, who having knowledge of the occurrence of an event affecting . . . [the] initial or continued right of any other person on whose behalf he has applied . . . shall not conceal or fail to disclose that event with intent to obtain a benefit to which the person or any other person is not entitled or in an amount greater than that to which the person or any other person is entitled.

95.   Section 400.606, states that "[a] person shall not enter into an agreement, combination, or conspiracy to defraud the state by obtaining or aiding another to obtain the payment or allowance of a false claim . . . ."

96.   In section 400.607, "[a] person shall not make or present or cause to be made or presented to an employee or officer of this state a claim . . . upon or against the state, knowing the claim to be false . . . ."  And that "[a] person shall not make or present or cause to be made or presented a claim . . . that he or she knows falsely represents that the goods or services for which the claim is made were medically necessary . . . ."

97.   In section 400.604, a person is prohibited from soliciting, offering, making, or receiving a kickback or bribe or rebate of any kind.

98.   Under section 400.612, "[a] person who receives a benefit that the person is not entitled to receive by reason of fraud or making a fraudulent statement or knowingly concealing a material fact . . . shall forfeit and pay to the state the full amount received, and for each civil penalty of not less than $5,000.00 or more than $10,000.00 plus triple the amount of damages suffered by the state as a result of the conduct by the person."

99.   Defendant knowingly violated these provisions of law by presenting or causing to be presented to the Michigan Medicaid program false and/or fraudulent claims for

payment and approval, claims which failed to disclose the material violations of the law, knowingly made, used, or caused to be made or used a false record or statement to support such claims and/or to conceal their actions and to avoid or decrease an obligation to pay or transmit money to the state, and they conspired with others to defraud the state Medicaid program, all in violation of the Michigan FCA, and thereby caused damage to the State of Michigan.

## COUNT SEVENTEEN - VIOLATIONS OF THE MINNESOTA FCA
### Minn. Stat. § 15C.02(a)

100.    Relator alleges and incorporates by reference the foregoing paragraphs as if fully set forth herein.

101.    The Minnesota FCA, Minn. Stat. § 15C.02, attaches liability to:

(a)      A[ny] person who . . . :

    (1)      knowingly presents, or causes to be presented, to an officer or employee of the state or a political subdivision a false or fraudulent claim for payment or approval;

    (2)      knowingly makes or uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the state or a political subdivision;

    (3)      knowingly conspires to either present a false or fraudulent claim to the state or a political subdivision for payment or approval or makes, uses, or causes to be made or used a false record or statement to obtain payment or approval of a false or fraudulent claim;

    (4)      has possession, custody, or control of public property or money used, or to be used, by the state or a political subdivision and knowingly delivers or causes to be delivered to the state or a political subdivision less money or property than the amount for which the person receives a receipt;

(5)     is authorized to prepare or deliver a receipt for money or property used, or to be used, by the state or a political subdivision and knowingly prepares or delivers a receipt that falsely represents the money or property;

(6)     knowingly buys, or receives as a pledge of an obligation or debt, public property from an officer or employee of the state or a political subdivision who lawfully may not sell or pledge the property; or

(7)     knowingly makes or uses, or causes to be made or used, a false record or statement to conceal, avoid, or decrease an obligation to pay or transmit money or property to the state or a political subdivision.

102.   Defendant knowingly presented or caused to be presented to the Minnesota Medicaid program false or fraudulent records or statements and false or fraudulent claims for payment and approval, claims which failed to disclose material violations of law, and/or concealed their actions and to avoid or decrease an obligation to pay or transmit money to the state, and conspired with others to do so, all in violation of the Minnesota FCA.

103.   The State of Minnesota paid said claims and has sustained damages, to the extent of its portion of Medicaid losses from Medicaid claims filed in Minnesota, because of these acts by Defendant.

## COUNT EIGHTEEN - VIOLATION OF THE MONTANA FALSE  CLAIMS ACT
### Mont. Code Ann. 17-8-401, *et seq*.

134.   Relator alleges and incorporates by reference the foregoing paragraphs as if fully set forth herein.

135.   This is a claim brought by Plaintiff/Relator and the State of Montana to recover treble damages, civil penalties and the cost of this action, under the Montana False Claims Act, for Defendant' violations of such Act.

136.   The Montana False Claims Act, at § 17-8-403 attaches liability to any person

who:

> (a) knowingly presents or causes to be presented to an officer or employee of the governmental entity a false or fraudulent claim for payment or approval;
>
> (b) knowingly makes, uses, or causes to be made or used a false record or statement to get a false or fraudulent claim paid or approved by the governmental entity;
>
> (c) conspires to defraud the governmental entity by getting a false or fraudulent claim allowed or paid by the governmental entity;
>
> (d) has possession, custody, or control of public property or money used or to be used by the governmental entity and, with the intent to defraud the governmental entity or to willfully conceal the property, delivers or causes to be delivered less property or money than the amount for which the person receives a certificate or receipt;
>
> (e) is authorized to make or deliver a document certifying receipt of property used or to be used by the governmental entity and, with the intent to defraud the governmental entity or to willfully conceal the property, makes or delivers a receipt without knowing that the information on the receipt is true;
>
> (f) knowingly buys or receives as a pledge of an obligation or debt public property of the governmental entity from any person who may not lawfully sell or pledge the property;
>
> (g) knowingly makes, uses, or causes to be made or used a false record or statement to conceal, avoid, or decrease an obligation to pay or transmit money or property to the governmental entity or its contractors; or
>
> (h) as a beneficiary of an inadvertent submission of a false or fraudulent claim to the governmental entity, subsequently discovers the falsity of the claim or that the claim is fraudulent and fails to disclose the false or fraudulent claim to the governmental entity within a reasonable time after discovery of the false or fraudulent claim.

137.    Defendant knowingly presented or caused to be presented to the Montana

Medicaid program false or fraudulent records or statements and false or fraudulent claims for

payment and approval, claims which failed to disclose material violations of law, and/or

concealed their actions and avoided or decreased an obligation to pay or transmit money to the state, and conspired to do so, all in violation of Montana Code Annotated. § 17-8-403.

138.     The State of Montana paid said claims and has sustained damages, to the extent of its portion of Medicaid losses from Medicaid claims filed in Montana, because of these acts by the Defendant.

## COUNT NINETEEN - VIOLATIONS OF THE NEVADA FCA
## Nev. Rev. Stat. § 357.040(1)

104.     Relator alleges and incorporates by reference the foregoing paragraphs as if fully set forth herein.

105.     The Nevada FCA, Nev. Rev. Stat. § 357.040(1), specifically provides, in part, that a person who:

with or without specific intent to defraud, does any of the following listed acts is liable to the State or a political subdivision, whichever is affected, for three times the amount of damages sustained by the State or political subdivision because of the act of that person, for the costs of a civil action brought to recover those damages and for a civil penalty of not less than $5,000 or more than $10,000 for each act:

    (a)    Knowingly presents or causes to be presented a false claim for payment or approval.

    (b)    Knowingly makes or uses, or causes to be made or used, a false record or statement to obtain payment or approval of a false claim.

    (c)    Conspires to defraud by obtaining allowance or payment of a false claim.

    (d)    Has possession, custody or control of public property or money and knowingly delivers or causes to be delivered to the State or a political subdivision less money or property than the amount for which the person receives a receipt.

    (e)    Is authorized to prepare or deliver a receipt for money or property to be used by the State or a political subdivision and knowingly prepares or delivers a receipt that falsely represents the money or property.

    (f)    Knowingly buys, or receives as security for an obligation, public property

from a person who is not authorized to sell or pledge the property.

(g)     Knowingly makes or uses, or causes to be made or used, a false record or statement to conceal, avoid or decrease an obligation to pay or transmit money or property to the State or a political subdivision.

(h)     Is a beneficiary of an inadvertent submission of a false claim and, after discovering the falsity of the claim, fails to disclose the falsity to the State or political subdivision within a reasonable time.

106.    Defendant knowingly presented or caused to be presented to the Nevada Medicaid program false or fraudulent records or statements and false or fraudulent claims for payment and approval, claims which failed to disclose material violations of law, and/or concealed their actions and to avoid or decrease an obligation to pay or transmit money to the state, and conspired with others to do so, all in violation of Nevada Revised Statute § 357.040(1).

107.    The State of Nevada paid said claims and has sustained damages, to the extent of its portion of Medicaid losses from Medicaid claims filed in Nevada, because of these acts by Defendant.

## COUNT TWENTY - VIOLATIONS OF THE NEW JERSEY FCA
## N.J. Stat. Ann. § 2A:32C-1

108.    Relator alleges and incorporates by reference the foregoing paragraphs as if fully set forth herein.

109.    The New Jersey FCA, N.J. Stat. Ann. § 2A:32C-3, supplementing Title 2A of the New Jersey statutes and amending New Jersey Medical Assistance and Health Services Act, P.L. 1968, c. 413, N.J. Stat. Ann. § 30:4D-17, provides in part that:

A person shall be jointly and severally liable to the State for a civil penalty of not less than and not more than the civil penalty allowed under the federal FCA (31 U.S.C. § 3729 *et seq.*), as may be adjusted in accordance with the inflation adjustment procedures prescribed in the Federal Civil Penalties Inflation Adjustment Act of 1990,

Pub. L. 101-410, for each false or fraudulent claim, plus three times the amount of damages which the State sustains, if the person commits any of the following acts:

a.     Knowingly presents or causes to be presented to an employee, officer or agent of the State, or to any contractor, grantee, or other recipient of State funds, a false or fraudulent claim for payment or approval;

b.     Knowingly makes, uses, or causes to be made or used a false record or statement to get a false or fraudulent claim paid or approved by the State;

c.     Conspires to defraud the State by getting a false or fraudulent claim allowed or paid by the State;

d.     Has possession, custody, or control of public property or money used or to be used by the State and knowingly delivers or causes to be delivered less property than the amount for which the person receives a certificate or receipt;

e.     Is authorized to make or deliver a document certifying receipt of property used or to be used by the State and, intending to defraud the entity, makes or delivers a receipt without completely knowing that the information on the receipt is true;

f.     Knowingly buys, or receives as a pledge of an obligation or debt, public property from any person who lawfully may not sell or pledge the property; or

g.     Knowingly makes, uses, or causes to be made or used a false record or statement to conceal, avoid, or decrease an obligation to pay or transmit money or property to the State.

110.    Defendant knowingly presented or caused to be presented to the New Jersey Medicaid program false or fraudulent records or statements and false or fraudulent claims for payment and approval, claims which failed to disclose material violations of law, and/or concealed their actions and to avoid or decrease an obligation to pay or transmit money to the state, and conspired with others to do so, all in violation of the New Jersey FCA.

111.    The State of New Jersey paid said claims and has sustained damages, to the extent

40

of its portion of Medicaid losses from Medicaid claims filed in New Jersey, because

of these acts by Defendant.

## COUNT TWENTY-ONE -  VIOLATIONS OF THE NEW MEXICO MEDICAID FCA
## N.M. Stat. Ann. § 27-14-4

112.  Relator alleges and incorporates by reference the foregoing paragraphs as if fully

set forth herein.

**113.**  The New Mexico Medicaid FCA, N.M. Stat. Ann. § 27-14-4, specifically provides,

in part, that:

A person commits an unlawful act and shall be liable to the state for three times the
amount of damages that the state sustains as a result of the act if the person:

    A.    presents, or causes to be presented, to the state a claim for payment under
the medicaid program knowing that such claim is false or fraudulent;

    B.    presents, or causes to be presented, to the state a claim for payment under
the medicaid program knowing that the person receiving a medicaid
benefit or payment is not authorized or is not eligible for a benefit under
the medicaid program;

    C.    makes, uses or causes to be made or used a record or statement to obtain a
false or fraudulent claim under the medicaid program paid for or approved
by the state knowing such record or statement is false;

    D.    conspires to defraud the state by getting a claim allowed or paid under the
medicaid program knowing that such claim is false or fraudulent;

    E.    makes, uses or causes to be made or used a record or statement to conceal,
avoid or decrease an obligation to pay or transmit money or property to
the state, relative to the medicaid program, knowing that such record or
statement is false;

    F.    knowingly applies for and receives a benefit or payment on behalf of
another person, except pursuant to a lawful assignment of benefits, under
the medicaid program and converts that benefit or payment to his own
personal use;

    G.    knowingly makes a false statement or misrepresentation of material fact
concerning the conditions or operation of a health care facility in order

that the facility may qualify for certification or recertification required by the medicaid program; or

H.      knowingly makes a claim under the medicaid program for a service or product that was not provided.

114.    Defendant knowingly presented or caused to be presented to the New Mexico Medicaid program false or fraudulent records or statements and false or fraudulent claims for payment and approval, claims which failed to disclose material violations of law, and/or concealed their actions and to avoid or decrease an obligation to pay or transmit money to the state, and conspired to do so, all in violation of the New Mexico Statute § 27-14-4.

115.    The State of New Mexico paid said claims and has sustained damages, to the extent of its portion of Medicaid losses from Medicaid claims filed in New Mexico, because of these acts by Defendant.

## COUNT TWENTY-TWO - VIOLATIONS OF THE NEW YORK FCA
## N.Y. State Fin. Law § 189

116.    Relator alleges and incorporates by reference the foregoing paragraphs as if fully set forth herein.

117.    The New York FCA, provides, in relevant part, as follows:

§ 189. Liability for certain acts.

1.      Subject to the provisions of subdivision two of this section, any person who:

(a)     knowingly presents, or causes to be presented a false or fraudulent claim for payment or approval;

(b)     knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim;

(c)     conspires to commit a violation of paragraph (a), (b), (d), (e), (f) or (g) of this subdivision;

(d)     has possession, custody, or control of property or money used, or to be used, by the state or a local government and knowingly delivers, or causes to be delivered, less than all of that money or property;

(e)     is authorized to make or deliver a document certifying receipt of property used, or to be used, by the state or a local government and, intending to defraud the state or a local government, makes or delivers the receipt without completely knowing that the information on the receipt is true;

(f)     knowingly buys, or receives as a pledge of an obligation or debt, public property from an officer or employee of the state or a local government knowing that the officer or employee violates a provision of law when selling or pledging such property; or

(g)     knowingly makes, uses, or causes to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the state or a local government shall be liable to the state or a local government, as applicable, for a civil penalty of not less than six thousand dollars and not more than twelve thousand dollars, plus three times the amount of all damages, including consequential damages, which the state or local government sustains because of the act of that person.

118.   Defendant knowingly presented or caused to be presented to the New York Medicaid program false or fraudulent records or statements and false or fraudulent claims for payment and approval, claims which failed to disclose material violations of law, and/or concealed their actions and to avoid or decrease an obligation to pay or transmit money to the state, and conspired with others to do so, all in violation of New York State Finance Law § 189.

119.   The State of New York paid said claims and has sustained damages, to the extent of its portion of Medicaid losses from Medicaid claims filed in New York, because of these acts by Defendant.

## COUNT TWENTY-THREE - VIOLATIONS OF THE NORTH CAROLINA FCA
### N.C. Gen. Stat. § 1-607(a)

120.   Relator alleges and incorporates by reference the foregoing paragraphs as if fully

set forth herein.

121.    The North Carolina FCA, N.C. Gen. Stat. § 1-607(a), attaches liability to:

Any person who . . . :

(1)    Knowingly presents or causes to be presented a false or fraudulent claim for payment or approval.

(2)    Knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim.

(3)    Conspires to commit a violation of subdivision (1), (2), (4), (5), (6), or (7) of this section.

(4)    Has possession, custody, or control of property or money used or to be used by the State and knowingly delivers or causes to be delivered less than all of that money or property.

(5)    Is authorized to make or deliver a document certifying receipt of property used or to be used by the State and, intending to defraud the State, makes or delivers the receipt without completely knowing that the information on the receipt is true.

(6)    Knowingly buys, or receives as a pledge of an obligation or debt, public property from any officer or employee of the State who lawfully may not sell or pledge the property.

(7)    Knowingly makes, uses, or causes to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the State, or knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the State.

122.    Defendant knowingly presented or caused to be presented to the North Carolina Medicaid program false or fraudulent records or statements and false or fraudulent claims for payment and approval, claims which failed to disclose material violations of law, and/or concealed their actions and to avoid or decrease an obligation to pay or transmit money to the state, and conspired with others to do so, all in violation of the

44

North Carolina FCA.

123.    The State of North Carolina paid said claims and has sustained damages, to the

extent of its portion of Medicaid losses from Medicaid claims filed in North Carolina,

because of these acts by Defendant.

## COUNT TWENTY-FOUR - VIOLATIONS OF OKLAHOMA MEDICAID FCA
## Okla. Stat. Ann. tit. 63 § 5053.1(B)

124.    Relator alleges and incorporates by reference the foregoing paragraphs as if fully

set forth herein.

125.    The Oklahoma Medicaid FCA, Okla. Sta. Ann. tit. 63 § 5053.1(B), added by

Laws 2007, c.137 § 63-5053.1A. 2B, provides in part that:

Any person who:

1.    Knowingly presents, or causes to be presented, to an officer or employee of the State of Oklahoma, a false or fraudulent claim for payment or approval;

2.    Knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the state;

3.    Conspires to defraud the state by getting a false or fraudulent claim allowed or paid;

4.    Has possession, custody, or control of property or money used, or to be used, by the state and, intending to defraud the state or willfully to conceal the property, delivers, or causes to be delivered, less property than the amount for which the person receives a certificate or receipt;

5.    Is authorized to make or deliver a document certifying receipt of property used, or to be used, by the state and, intending to defraud the state, makes or delivers the receipt without completely knowing that the information on the receipt is true;

6.    Knowingly buys, or receives as a pledge of an obligation or debt, public property from an officer or employee of the state, who lawfully may not sell or pledge the property; or

7.    Knowingly makes, uses, or causes to be made or used, a false record or statement to conceal, avoid, or decrease an obligation to pay or transmit money or property

45

to the state, is liable to the State of Oklahoma for a civil penalty of not less than Five Thousand Dollars ($5,000.00) and not more than Ten Thousand Dollars ($10,000.00), unless a penalty is imposed for the act of that person in violation of this subsection under the federal FCA for the same or a prior action, plus three times the amount of damages which the state sustains because of the act of that person.

126.   Defendant knowingly presented or caused to be presented to the Oklahoma

Medicaid program false or fraudulent records or statements and false or fraudulent

claims for payment and approval, claims which failed to disclose material violations

of law, and/or concealed their actions and to avoid or decrease an obligation to pay or

transmit money to the state, and conspired with others to do so, all in violation of the

Oklahoma Medicaid FCA.

127.   The State of Oklahoma paid said claims and has sustained damages, to the extent

of its portion of Medicaid losses from Medicaid claims filed in Oklahoma, because of

these acts by Defendant.


**COUNT TWENTY-FIVE - VIOLATIONS OF RHODE ISLAND STATE FCA**
**R.I. Gen. Laws § 9-1.1-3(a)**

128.   Relator alleges and incorporates by reference the foregoing paragraphs as if fully

set forth herein.

129.    The Rhode Island State FCA amending Title 9 of the Rhode Island general laws

entitled "Courts and Civil Procedure/Procedure Generally," ch. 9-1.1, § 9-1.1-3(a),

provides, in part, that:

Any person who:

(1)    knowingly presents, or causes to be presented, to an officer or employee of the state or a member of the guard a false or fraudulent claim for payment or approval;

(2)    knowingly makes, uses, or causes to be made or used, a false record or statement

46

to get a false or fraudulent claim paid or approved by the state;

(3)     conspires to defraud the state by getting a false or fraudulent claim allowed or paid;

(4)     has possession, custody, or control of property or money used, or to be used, by the state and, intending to defraud the state or willfully to conceal the property, delivers, or causes to be delivered, less property than the amount for which the person receives a certificate or receipt;

(5)     authorized to make or deliver a document certifying receipt of property used, or to be used, by the state and, intending to defraud the state, makes or delivers the receipt without completely knowing that the information on the receipt is true;

(6)     knowingly buys, or receives as a pledge of an obligation or debt, public property from an officer or employee of the state, or a member of the guard, who lawfully may not sell or pledge the property; or

(7)     knowingly makes, uses, or causes to be made or used, a false record or statement to conceal, avoid or decrease an obligation to pay or transmit money or property to the state, is liable to the state for a civil penalty of not less than five thousand dollars ($5,000) and not more than ten thousand dollars ($10,000), plus three (3) times the amount of damages which the state sustains because of the act of that person.  A person violating this subsection (a) shall also be liable to the state for the costs of a civil action brought to recover any such penalty or damages.

130.    Defendant knowingly presented or caused to be presented to the Rhode Island Medicaid program false or fraudulent records or statements and false or fraudulent claims for payment and approval, claims which failed to disclose material violations of law, and/or concealed their actions and to avoid or decrease an obligation to pay or transmit money to the state, and conspired with others to do so, all in violation of Rhode Island General Law § 9-1.1-3(a).

131.    The State of Rhode Island paid said claims and has sustained damages, to the extent of its portion of Medicaid losses from Medicaid claims filed in Rhode Island, because of these acts by Defendant.

47

## COUNT TWENTY-SIX - VIOLATIONS OF THE TENNESSEE MEDICAID FALSE CLAIMS ACT
### Tenn. Code Ann. § 71 – 5-182 et seq.

132.   Relator alleges and incorporates by reference the foregoing paragraphs as if fully set forth herein.

133.   The Tennessee Medicaid False Claims Act prohibits the making of false claims.

134.   The State of Tennessee paid said claims and has sustained damages, to the extent of its portion of Medicaid losses from Medicaid claims filed in Tennessee, because of these acts by Defendant.

## COUNT TWENTY-SEVEN - VIOLATIONS OF TEXAS FCA
### Tex. FCA Hum. Res. Code § 32.039(b), (c)

135.   Relator alleges and incorporates by reference the foregoing paragraphs as if fully set forth herein.

136.    The Texas FCA, Tex. Hum. Res. Code § 32.039, specifically provides, in part, that:

(b)   A person commits a violation if the person:

(1)   presents or causes to be presented to the department a claim that contains a statement or representation the person knows or should know to be false;

(1-a) engages in conduct that violates Section 102.001, Occupations Code;

(1-b) solicits or receives, directly or indirectly, overtly or covertly any remuneration, including any kickback, bribe, or rebate, in cash or in kind for referring an individual to a person for the furnishing of, or for arranging the furnishing of, any item or service for which payment may be made, in whole or in part, under the medical assistance program, provided that this subdivision does not prohibit the referral of a patient to another practitioner within a multispecialty group or university medical services research and development plan (practice plan) for medically necessary services;

48

(1-c) solicits or receives, directly or indirectly, overtly or covertly any remuneration, including any kickback, bribe, or rebate, in cash or in kind for purchasing, leasing, or ordering, or arranging for or recommending the purchasing, leasing, or ordering of, any good, facility, service, or item for which payment may be made, in whole or in part, under the medical assistance program;

(1-d) offers or pays, directly or indirectly, overtly or covertly any remuneration, including any kickback, bribe, or rebate, in cash or in kind to induce a person to refer an individual to another person for the furnishing of, or for arranging the furnishing of, any item or service for which payment may be made, in whole or in part, under the medical assistance program, provided that this subdivision does not prohibit the referral of a patient to another practitioner within a multispecialty group or university medical services research and development plan (practice plan) for medically necessary services;

(1-e) offers or pays, directly or indirectly, overtly or covertly any remuneration, including any kickback, bribe, or rebate, in cash or in kind to induce a person to purchase, lease, or order, or arrange for or recommend the purchase, lease, or order of, any good, facility, service, or item for which payment may be made, in whole or in part, under the medical assistance program;

(1-f) provides, offers, or receives an inducement in a manner or for a purpose not otherwise prohibited by this section or *Section 102.001, Occupations Code*, to or from a person, including a recipient, provider, employee or agent of a provider, third-party vendor, or public servant, for the purpose of influencing or being influenced in a decision regarding:

      (A)    selection of a provider or receipt of a good or service under the medical assistance program;

      (B)    the use of goods or services provided under the medical assistance program; or

      (C)    the inclusion or exclusion of goods or services available under the medical assistance program; or

(2)    is a managed care organization that contracts with the department to provide or arrange to provide health care benefits or services to individuals eligible for medical assistance and:

(A)     fails to provide to an individual a health care benefit or service that the organization is required to provide under the contract with the department;

(B)     fails to provide to the department information required to be provided by law, department rule, or contractual provision;

(C)     engages in a fraudulent activity in connection with the enrollment in the organization's managed care plan of an individual eligible for medical assistance or in connection with marketing the organization's services to an individual eligible for medical assistance; or

(D)     engages in actions that indicate a pattern of:

(i)     wrongful denial of payment for a health care benefit or service that the organization is required to provide under the contract with the department; or

(ii)    wrongful delay of at least 45 days or a longer period specified in the contract with the department, not to exceed 60 days, in making payment for a health care benefit or service that the organization is required to provide under the contract with the department.

(c)     A person who commits a violation under Subsection (b) is liable to the department for:

(1)     the amount paid, if any, as a result of the violation and interest on that amount determined at the rate provided by law for legal judgments and accruing from the date on which the payment was made; and

(2)     payment of an administrative penalty of an amount not to exceed twice the amount paid, if any, as a result of the violation, plus an amount:

(A)     not less than $ 5,000 or more than $ 15,000 for each violation that results in injury to an elderly person, as defined by Section 48.002(1), a disabled person, as defined by Section 48.002(8)(A), or a person younger than 18 years of age; or

(B)     not more than $ 10,000 for each violation that does not result in injury to a person described by Paragraph (A).

137.    Defendant knowingly presented or caused to be presented to the Texas Medicaid

program false or fraudulent records or statements and false or fraudulent claims for

payment and approval, claims which failed to disclose material violations of law,

and/or concealed their actions and to avoid or decrease an obligation to pay or

transmit money to the state, and conspired with others to do so, all in violation of

Texas FCA Human Resources Code § 32.039(b), (c).

138.    The State of Texas paid said claims and has sustained damages, to the extent of its

portion of Medicaid losses from Medicaid claims filed in Texas, because of these acts

by Defendant.

**COUNT TWENTY- EIGHT- VIOLATIONS OF THE VIRGINIA FRAUD AGAINST
TAXPAYERS ACT
Va. Code Ann. § 8.01-216.3(A)**

139.    Relator alleges and incorporates by reference the foregoing paragraphs as if fully

set forth herein.

140.    The Virginia Fraud Against Taxpayers Act, Va. Code Ann. § 8.01-216.3(A),

specifically provides, in part, that:

Any person who:

1.    Knowingly presents, or causes to be presented, to an officer or employee of the
Commonwealth a false or fraudulent claim for payment or approval;

2.    Knowingly makes, uses, or causes to be made or used, a false record or statement
to get a false or fraudulent claim paid or approved by the Commonwealth;

3.    Conspires to defraud the Commonwealth by getting a false or fraudulent claim
allowed or paid;

4.    Has possession, custody, or control of property or money used, or to be used, by
the Commonwealth and, intending to defraud the Commonwealth or willfully to

conceal the property, delivers, or causes to be delivered, less property than the
amount for which the person receives a certificate or receipt;

5.      Authorizes to make or deliver a document certifying receipt of property used, or
to be used, by the Commonwealth and, intending to defraud the Commonwealth,
makes or delivers the receipt without completely knowing that the information on
the receipt is true;

6.      Knowingly buys or receives as a pledge of an obligation or debt, public property
from an officer or employee of the Commonwealth who lawfully may not sell or
pledge the property; or

7.      Knowingly makes, uses, or causes to be made or used, a false record or statement
to conceal, avoid, or decrease an obligation to pay or transmit money or property
to the Commonwealth;

shall be liable to the Commonwealth for a civil penalty of not less than $ 5,500 and not
more than $ 11,000, plus three times the amount of damages sustained by the
Commonwealth.

141.    Defendant knowingly presented or caused to be presented to the Virginia

Medicaid program false or fraudulent records or statements and false or fraudulent

claims for payment and approval, claims which failed to disclose material violations

of law, and/or concealed their actions and to avoid or decrease an obligation to pay or

transmit money to the state, and conspired with others to do so, all in violation of

Virginia Code § 8.01-216.3(A).

142.    The Commonwealth of Virginia paid said claims and has sustained damages, to

the extent of its portion of Medicaid losses from Medicaid claims filed in Virginia,

because of these acts by Defendant.

## COUNT TWENTY-NINE - VIOLATIONS OF THE WISCONSIN FALSE CLAIMS FOR MEDICAL ASSISTANCE LAW
## Wis. Stat. Ann. § 20.931(2)

143.    Relator alleges and incorporates by reference the foregoing paragraphs as if fully

set forth herein.

144.    The Wisconsin False Claims for Medical Assistance Law, added by 2007

Wisconsin Act 20, Wis. Stat. Ann. 20.931(2), provides, in part, that:

any person who does any of the following is liable to this state for 3 times the amount of the damages sustained by this state because of the actions of the person, and shall forfeit not less than $5,000 nor more than $10,000 for each violation:

(a)     Knowingly presents or causes to be presented to any officer, employee, or agent of this state a false claim for medical assistance.

(b)     Knowingly makes, uses, or causes to be made or used a false record or statement to obtain approval or payment of a false claim for medical assistance.

(c)     Conspires to defraud this state by obtaining allowance or payment of a false claim for medical assistance, or by knowingly making or using, or causing to be made or used, a false record or statement to conceal, avoid, or decrease an obligation to pay or transmit money or property to the Medical Assistance program.

(g)     Knowingly makes, uses, or causes to be made or used a false record or statement to conceal, avoid, or decrease any obligation to pay or transmit money or property to the Medical Assistance program.

(h)     Is a beneficiary of the submission of a false claim for medical assistance to any officer, employee, or agent of this state, knows that the claim is false, and fails to disclose the false claim to this state within a reasonable time after the person becomes aware that the claim is false.

145.    Defendant knowingly presented or caused to be presented to the Wisconsin

Medicaid program false or fraudulent records or statements and false or fraudulent

claims for payment and approval, claims which failed to disclose material violations

of law, and/or concealed their actions and to avoid or decrease an obligation to pay or

transmit money to the state, and conspired with others to do so, all in violation of

Wisconsin Statute § 20.931(2).

146.    The State of Wisconsin paid said claims and has sustained damages, to the extent

of its portion of Medicaid losses from Medicaid claims filed in Wisconsin, because of

these acts by Defendant.

## PRAYERS FOR RELIEF

WHEREFORE, Relator, acting on behalf of and in the name of the United States of

America and the State Plaintiffs, demands and prays that judgment be entered as follows against

Defendant under the Federal FCA counts and under the State FCA counts as follows:

(a)     In favor of the United States against Defendant for treble the amount of damages

paid by the United States as a result of Defendant's conduct in causing the

submission of false claims tainted by the payment of staffing kickback, plus

maximum civil penalties of Eleven Thousand Dollars ($11,000.00) for each

violation of the FCA;

(b)     In favor of the United States against Defendant for disgorgement of the profits

earned by Defendant as a result of its illegal schemes;

(c)      In favor of Relator for the maximum amount allowed pursuant to 31 U.S.C.

§ 3730(d) to include reasonable expenses, attorney fees, and costs incurred by

Relator;

(d)      For all costs of the Federal FCA civil action;

(f)     In favor of Relator and the named State Plaintiffs against Defendant in an amount

equal to three times the amount of damages that California, Colorado,

54

Connecticut, Delaware, District of Columbia, Florida, Georgia, Hawaii, Illinois, Iowa, Indiana, Louisiana, Maryland, Massachusetts, Minnesota, Nevada, New Jersey, New Mexico, New York, North Carolina, Oklahoma, Rhode Island, Tennessee, Virginia, and Wisconsin have sustained, respectively, as a result of Defendant' actions, as well as a civil penalty against Defendant of a statutory maximum for each violation of each State's FCA;

(g)     In favor of Relator and the Plaintiff State of Michigan against Defendant for a civil penalty equal to one time the loss caused to the Michigan Medicaid program as a result of Defendant' actions, plus damages equal to three times such loss;

(h)     In favor of Relator and the Plaintiff State of Texas against Defendant in an amount equal to two times the amount of damages that Texas has sustained as a result of Defendant' actions;

(i)     In favor of Relator for the maximum amount as a relator's share allowed pursuant to each State Plaintiff's FCA;

(j)     In favor of Relator for all costs and expenses associated with the supplemental state claims, including attorney's fees and costs;

(k)     In favor of the State Plaintiffs and Relator for all such other relief as the Court deems just and proper; and

(m)     Such other relief as this Court deems just and appropriate.

**JURY DEMAND**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Relators hereby demand a trial by jury.

_Susan L. Burke _____
Susan L. Burke
Law Offices of Susan L. Burke
1611 Park Avenue
Baltimore, MD 21217
Telephone: (410) 544-7333
Facsimile: (410) 544-7333
sburke@burkepllc.com

April 2, 2017